AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 26-MJ-1345 |
| THE MOBILE DEVICE PREVIOUSLY ASSIGNED CELLULAR TELEPHONE NUMBER 267-975-3031 | ) ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Refer to Attachment A

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Refer to Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119;  18 U.S.C. § 924(c); 18 U.S.C. § 371 | Carjacking; use of a firearm during and in relation to a crime of violence; conspiracy |

The application is based on these facts:

Refer to attached affidavit

❏ Continued on the attached sheet.

❏ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Matthew Gianchetti
*Applicant's signature*

Matthew Gianchetti, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41(d)(3) by _____telephonic means_____ *(specify reliable electronic means).*

Date: _____

Digitally signed by Caroline Goldner Cinquanto
Date: 2026.07.10 16:28:07 -04'00'

*Judge's signature*

City and state: Philadelphia, Pennsylvania

USMJ CAROLINE GOLDNER CINQUANTO
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE MOBILE DEVICE PREVIOUSLY ASSIGNED CELLULAR TELEPHONE NUMBER 267-975-3031 | Case No. 26-MJ-1345 |

**AFFIDAVIT IN SUPPORT OF ANAPPLICATION UNDER
RULE 41 FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE
ELECTRONIC MEANS TO <u>SEARCH AND SEIZE</u>**

I, Special Agent Matthew Gianchetti, being duly sworn, do hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since July 2023. As a Special Agent with ATF, I investigate alleged violations of firearm laws. I graduated from Shippensburg University with a bachelor's degree in criminal justice and a minor in business administration. In October 2023, I completed the Criminal Investigator Training Program (CITP) as well as Special Agent Basic Training (ATF SABT) in February 2024 at the Federal Law Enforcement Training Center (FLETC). Through my experience as a Special Agent, I have assisted with serving federal warrants in relation to investigations of violent crime. I have previously sought and executed federal search warrants for physical and electronic evidence during my career.

2.      Throughout the course of my law enforcement career, I have assisted with investigations of violent crimes involving firearms. Those investigations resulted in the seizure of firearms, and other forms of physical evidence including electronic evidence such as cellular devices and computers. I have assisted with investigations that involved evidence found on

1

electronic devices and within records related to the use of those electronic devices such as those that are the subject of the requested warrant. Thus, based on my training and experience, I am familiar with the use of cellular phones and electronic communication to facilitate criminal activities.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all my knowledge about this matter.

4.      Because this affidavit is submitted for the limited purpose of obtaining search warrants, I have not included all information known by me or other agents concerning this investigation.  I have set forth only those facts I believe are essential to establish the probable cause for the search warrants.  This affidavit does not exhaust my knowledge or that of other agents of the facts and circumstances surrounding this investigation.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2119 (carjacking), 924(c) (use of a firearm during and in relation to a crime of violence), 371 (conspiracy), and 2 (aiding and abetting) (collectively, "the Target Offenses") have been committed by Christian Davis and others.

6.      I make this affidavit in support of the application for a warrant to forensically examine a white Apple iPhone with a cracked front screen which was recovered during a search of Christian DAVIS's residence located at 6118 N. Broad St., Apartment 3, Philadelphia, PA (26-MJ-923-1) and was operating with cellular phone number **267-975-3031**, (**"SUBJECT PHONE"**) at the time of the carjacking under investigation and further described in the following paragraphs and Attachment A.

7.      There is also probable cause to search the information described in Attachments

2

A for evidence of these crimes as further described in Attachments B.

**JURISDICTION**

8.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is a "district court of the United States (including a magistrate judge of such court) . . . that has jurisdiction over the offense being investigated[.]" 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

Carjacking at 800 E Woodlawn Avenue, Philadelphia

9.      On March 17, 2026, at approximately 11:30 pm, the victim (TG)[1] was making an Uber Eats delivery to 840 E. Woodlawn Street, in Philadelphia.  After making the delivery, TG was returning to his car when a Toyota Camry (Camry) pulled up next to his vehicle, a 2019 Subaru Forester (Forester), bearing PA tag NBD-7260[2].  At this point, two males exited the Camry and approached TG. TG described both males as black, wearing all black clothing with black masks, approximately 25-35 years old, approximately 5'6" to 5'9" tall, and suspect #2 being slightly bigger in build then suspect #1. As part of this investigation, the victim of this carjacking, TG, was interviewed by law enforcement and relayed the events that followed the men approaching him.

10.      TG stated that Suspect #1 was armed with a black rifle, and he pointed the gun

---

[1] The victim is known to law enforcement and has been interviewed in connection with this investigation. The victim of this investigation has provided information as a victim/witness and not in expectation or receiving compensation or consideration in connection with any criminal case. The information provided by the victim is believed to be truthful and credible as aspects have been corroborated by other evidence in this investigation.

[2] I am aware from this investigation that the Forester was manufactured outside of the Commonwealth of Pennsylvania.

at TG while demanding the keys to the Forester. Suspect #1 then directed TG to throw his cellular phone under the Forester.  TG relayed that Suspect #1 then entered the driver's seat of the Forester and Suspect #2 got into the rear of the Forester

11.     While being interviewed at PPD Northwest Detectives, TG was able to track the Forester on his cellular phone via the "My Subaru" app[3]. The Forester was tracked to the area of 1500 Medary Avenue in Philadelphia.  This information was relayed to uniform patrol officers, and the vehicle was recovered by Philadelphia Police Department (PPD) officers at approximately 2:00 am.   The vehicle was then towed to a secure lot for later processing by PPD Detectives.

<u>Identification of Toyota Camry as Suspect Vehicle</u>

12.     Philadelphia Police were able to retrieve surveillance footage that captured the moments before the carjacking. The video shows a gold-metallic colored Toyota Camry circling the block in which the crime occurred, just prior to the carjacking.  Additional footage depicted the Camry following the Forester east on Woodlawn Avenue and then south on Sprague Street out of view of cameras after the crime was committed.   A closer review of the surveillance footage revealed that the Camry appeared to be missing the fuel door cover on the driver's side of the vehicle.

13.     Investigators were able to determine that a 2007 Toyota Camry with a missing fuel tank cover, affixed with Delaware Temporary Paper Tag XQ634086 was scanned multiple times by License Plate Readers (LPR) utilized by PPD in the area of 6100 Broad Street (one block south of 1500 Medary where the Forester was recovered by Police).  The same vehicle was also scanned by LPRs while in motion on March 5, 2026, in the area of Philadelphia City

---

[3] TG was able to recover his phone after the offenders drove away in the vehicle

Hall (Juniper Street and Commerce Street).

<u>Vehicle Investigations of Christian DAVIS driving gold Toyota Camry</u>

14.    A review of PPD reports shows that Christan DAVIS was stopped by Philadelphia Police driving the gold-colored Toyota Camry with DE temporary tag XQ634086 on both March 26, 2026, and March 30, 2026.  Police reports and a review of the Officer's BWC shows a black male identified as Christian DAVIS driving the vehicle on both occasions. DAVIS explained to officers that the vehicle belonged to him, but that he has not had time to register it yet.  Davis provided proof of ownership to the officers he was interacting with. Additionally, during the March 30, 2026, investigation, DAVIS provided his cellular phone number to police as "267-975-3031" **(SUBJECT PHONE)** as well as his address 6118 N. Broad Street, Apartment #3.

<u>Search Warrant served to T-Mobile for Location Information</u>

15.    On April 6, 2026, ATF executed Warrant 26-MJ-604, signed by the Honorable Carol Sandra Moore Wells on T-Mobile for location information attributed to phone number 267-975-3031 **(SUBJECT PHONE).**

16.    A return of information showed that the **SUBJECT PHONE** was in the immediate area of the carjacking from 11:26 to 11:32 pm.  Surveillance footage indicated DAVIS' gold Toyota Camry circling the block at 11:28 pm, stopping next to the carjacked vehicle at 11:31 pm, and then driving behind the victim's carjacked vehicle after the robbery occurred at 11:32 pm.

17.    Following the carjacking, the **SUBJECT PHONE** then traveled north towards the area in which the carjacked vehicle was ultimately recovered by Philadelphia Police.

<u>Grand Jury Subpoena Served to Apple Inc</u>

5

18.     On April 2, 2026, ATF served a Grand Jury subpoena to Apple Inc. for iCloud information attributed to **SUBJECT PHONE**.  A return of information showed that the subscriber billing information listed for the user on December 25, 2023, was "Christian Davis", with the attached email account of tssvchris@gmail.com.  On November 25, 2025, the subscriber billing information was updated to the name "Baby 5ive" with the corresponding email account of baby5ivedoa@iCloud.com, and address listed at 6118 N. Broad Street. Records show that the account user also registered an iPhone 14 device on April 16, 2025.

19.     A search of Pennsylvania's Driver License Information showed that Christian DAVIS had an identification card issued on 3/25/2025.  The identification number is 35005977, and DAVIS' listed address on the Identification card is 6118 N. Broad Street, Philadelphia, PA 19141.  This information corroborates what DAVIS told Philadelphia Police Officers during his traffic stop on March 30, 2026.

<u>MAY 20, 2026 SEARCH OF 6118 N. BROAD ST. APT. 3</u>

20.     On May 20, 2026, ATF executed Federal Search Warrant 26-MJ-923-1 (signed by the Honorable Caroline Goldner Cinquanto on 05/18/2026) at Christian DAVIS's residence, 6118 N Broad St., Apt 3, Philadelphia, PA. During the search of the apartment, among other items relevant to the investigation, two Apple iPhones belonging to Christian DAVIS were seized. Agents called "267-975-3031" and a newer Apple iPhone sitting on the TV stand in the living room rang. DAVIS later indicated that he and his mother had purchased the phone the day prior (the phone that rang when called). DAVIS indicated that his other phone, **SUBJECT PHONE**, which was recovered from the couch in the living room with a broken front screen and white back, was his old phone (the phone operating call number "267-975-3031" at the time of the carjacking). DAVIS's girlfriend, who was in the apartment at the time of his arrest, also

6

relayed the above information about DAVIS's phones to investigators.

21.    On June 10, 2026, the Honorable Lynne A. Sitarski signed search warrant 26-MJ-1118 authorizing Agents to search the **SUBJECT PHONE** between April 1, 2026, to present (June 10, 2026). Subsequently, the Honorable Lynne A. Sitarski signed search warrant 26-MJ-1152 on June 11, 2026, authorizing Agents to search the **SUBJECT PHONE** between March 1, 2026, and April 1, 2026.

22.    In a conversation with a contact saved in the **SUBJECT PHONE** as "Glocks" (267-679-0075), it is evident to Investigators that DAVIS has a history of conducting criminal activity prior to the beginning date of March 1, 2026 authorized by search warrant 26-MJ-1152, leading Investigators to believe that there is further evidence of criminal activity stored on the **SUBJECT PHONE**.

| | |
|---|---|
| 03/10/2026 "Glocks": | tell nggas we selling arp |
| 03/10/2026 "Glocks": | 900-1100 |
| 03/10/2026 DAVIS: | Rd |

23.    In the above conversation on March 10, 2026, between "Glocks" and DAVIS, "Glocks" indicates that he/she has an "ARP" (slang for AR-style pistol) for sale for $900-$1100 and to tell people. Based on my training and experience, individuals who engage in firearm trafficking and unlicensed firearms sales typically do not conduct business with individuals whom they have not had a history or have some level of trust, therefore leading Investigators to believe that DAVIS and "Glocks" have had a history of conducting criminal activity prior to March 1, 2026 (just 10 days prior to the conversation). Data indicates that this conversation began well before March 1, 2026.

7

24.    Additionally, investigators identified numerous photos of firearms including a Glock pistol with a tan extended magazine and a machine gun conversion device (MCD) attached to the firearm, dating back to March 2, 2026. Numerous photos were identified showing the individual known to law enforcement as Christian DAVIS posing and holding the Glock pistol and taking a photo of himself in front of a mirror. Furthermore, photos of the AR-style pistol with a purple serial number plate, which was recovered by ATF during the search of DAVIS' residence on May 20, 2026 (26-MJ-923-1), were identified by Investigators. It is likely that there are other photographs and videos of other illegal guns present in **SUBJECT PHONE** prior to March 1, 2026.

25.    Due to the number of photos of firearms as well as the nature of the criminal nature of the conversations reviewed with in the timeframes previously authorized by search warrants (26-MJ-1118 & 26-MJ-1152), your affiant is seeking a search warrant to forensically examine the **SUBJECT PHONE** data starting on March 1, 2025, one (1) year prior to beginning of the timeframe previously authorized by search warrant 26-MJ-1152, as Investigators have been led to believe there is further evidence of criminal activity within.

### Request to Search SUBJECT PHONE

26.    There is probable cause to search the **SUBJECT PHONE** for evidence of the federal crimes described above, in particular for evidence of carjacking, aiding and abetting, conspiracy, and using a firearm during and in relation to a crime of violence. Here, the identity of the second offender remains unknown to law enforcement and by as set forth below, searching the **SUBJECT PHONE** investigators is likely to reveal the identity of the second participant in the offense. As described above, the manner in which the carjacking occurred, and how the offenders fled in tandem, indicates to me a coordinated effort among at least two people to

8

commit the crime. In my experience this degree of coordination involved preplanning to meet, travel to the crime, flee together, and attempt to use or dispose of the crime proceeds. This, in my training and experience, typically involves the use of cellular telephones to place calls, send text messages and use social media applications to communicate with others. As a result, I believe that the **SUBJECT PHONE** contains evidence relevant to the crimes under investigation.

27.    Based on my training and experience, I know individuals who commit offenses of the nature discussed herein commonly utilize their cellular telephones to communicate with co-conspirators to facilitate, plan, and execute the offenses. This is more likely to be the case here, where the crimes involved at least two offenders who, based on the investigation, appear to live in different homes and therefore had to communicate to meet and commit their crimes. Offenders often store contact lists, address books, calendars, photographs, videos, and audio files, text messages, call logs, and voicemails in their electronic devices (such as cellular telephones) to be used in furtherance of their activities.

28.    In addition, I know that those committing crimes often take photographs or make videos of themselves and their co-conspirators and retain them on their electronic devices such as cellular telephones. This evidence would show associations between accomplices, i.e., photographs of accomplices and/or individuals common to co-conspirators. Based on my training and experience, those who commit these crimes often store these items on their phones to show to associates, and/or to upload to social media.

29.    Furthermore, cellular telephones also contain address books with names, addresses, photographs, and phone numbers of a person's regular contacts. I am aware criminal actors frequently list associates or co-conspirators in directories, often by nickname, or to avoid detection by others. Such directories likely contained in the **SUBJECT PHONE** are one of the few ways to verify the

9

numbers (i.e., telephones, pagers, etc.) being used by specific criminal actors.

30.    Based on my training and experience and the training and experience of other agents, I also know that criminal actors often use a cellular phone's Internet browser for web browsing activity related to their activities. In addition, I know that criminal actors also use their cellular telephone's internet browser to update their social networking sites (e.g., Instagram) in order to communicate with co-conspirators, to display firearms, or to post photographs of locations where they have traveled.

31.    In addition, criminal actors sometimes use cellular telephones as navigation devices, obtaining maps and directions to various locations in furtherance of their criminal offenses.  These electronic devices may also contain GPS navigation capabilities and related stored information that could identify where the **SUBJECT PHONE** was located at near the time of the incident.

32.    Furthermore, based on my training and experience, forensic evidence recovered from the review of a cellular telephone can also assist in establishing the identity of the user of the device, how the device was used, the purpose of its use, and when it was used.  In particular, I am aware that cellular telephones are all identifiable by unique numbers on each phone, including: serial numbers, international mobile equipment identification numbers (IMEI) and/or electronic serial numbers (ESN). The search of each phone helps determine the telephone number assigned to each device, thus facilitating the identification of the phone as being used by members of the conspiracy.  In addition, I am aware that by using forensic tools, information/data that users have deleted may still be able to be recovered from the device.

## TECHNICAL TERMS

33.    Based on my training and experience, I use the following technical terms to convey the following meanings:

10

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When

11

a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.   Pager:  A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network.  Some pagers enable the user to send, as well as receive, text messages.

h.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

34.    Based on my training, experience, and research, I know that the **SUBJECT PHONE** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation device.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

35.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

36.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.

13

Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

37. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

38. *Manner of execution.* Because this warrant seeks permission to examine the SUBJECT PHONE once the devices are in law enforcement's possession, the execution of the warrants to search the SUBJECT PHONE will not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant to search the SUBJECT PHONE at any time in the day or night.

## CONCLUSION

39.    I submit that this affidavit supports probable cause for a warrant to search the phone described in Attachments A.

40.    Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums.

Respectfully submitted,

*/s/ Matthew Gianchetti*
Matthew Gianchetti
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Subscribed and sworn to by telephone
in accordance with Fed. R. Crim. P. 4.1
on July   , 2026:

Digitally signed by Caroline
Goldner Cinquanto
Date: 2026.07.10 16:21:47
-04'00'

_____
HON. CAROLINE GOLDNER CINQUANTO
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

This warrant authorizes the search of a white Apple iPhone with a broken front screen which operated cellular phone number **267-975-3031**, **("SUBJECT PHONE")** at the time of the carjacking, for the purpose of identifying and seizing the electronically stored information described in Attachment B.



16

**ATTACHMENT B**

**Particular Things to be Seized**

1.      All records on **SUBJECT PHONE** that relate to violations of Title 18, United States Code, Sections 2119 (carjacking), 371 (conspiracy), 2 (aiding and abetting), and 924(c) (use of a firearm during and in relation to a crime of violence), from March 1, 2025 to March 1, 2026 including:

a.  Documents in electronic form, including correspondence, records, opened or unopened emails, text messages, voicemail messages, call logs, chat logs, internet history, social media application data and content, GPS data and map history, mobile payment application data, address book and calendar entries, photographs, and videos, relating to the violation of the statutes above.

b.  Stored information including contact information, photographs, videos, voice messages, text messages, emails, browser history, applications, and call logs, relating to any co-conspirators, including names, addresses, telephone numbers, or other identifying information of any persons who may be involved in the violation of the statutes above.

c.  Documents and records of any activity taken, or communication made, in furtherance of the possession or use of a firearm or ammunition, or to hide the evidence thereof after the possession or use of a firearm or ammunition. Documents and records of any activity taken, or communication made, in furtherance of carjackings and the possession or use of stolen vehicles, or to hide the evidence thereof.

d.  Evidence of user attribution showing who used or owned the cellular device at the time the items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

e.  Evidence and contents of logs and files on the device, such as those generated by the device's operating system, which describes the history and use of the device, including but not limited to files indicating when files were written, opened, saved, or deleted.

f.  Evidence tending to show the identity of the person using the device at the time any actions relating to the above offenses were taken.

g.  As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including, but not limited to the following:

17

    i.      Any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

    ii.      All data that has been manually programmed into a GPS navigation system, as well as data automatically stored by the GPS navigation system, including any and all electronic data which can be collected, analyzed, created, displayed, converted, stored, concealed, or transmitted, or similar computer impulses or data.

    iii.      Stored electronic information and communications, including but not limited to, telephone or address directory entries consisting of names, addresses and telephone numbers; logs of telephone numbers dialed, telephone numbers of missed calls, and telephone numbers of incoming calls; schedule entries; stored memoranda; stored text messages; stored photographs; store audio; and stored video.

Evidence of user attribution showing who used or owned the **SUBJECT PHONE** at the time that the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history   As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

18

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>THE MOBILE DEVICE PREVIOUSLY ASSIGNED<br>CELLULAR TELEPHONE NUMBER 267-975-3031 | )<br>)<br>)  Case No.    26-MJ-1345<br>)<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT BY TELEPHONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Pennsylvania _____
*(identify the person or describe the property to be searched and give its location)*:

Refer to Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Refer to Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 24, 2026 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the duty magistrate.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____

Digitally signed by Caroline Goldner Cinquanto
Date: 2026.07.10 16:29:15 -04'00'

*Judge's signature*

City and state:      Philadelphia, Pennsylvania                    USMJ CAROLINE GOLDNER CINQUANTO

*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>  26-MJ-1345 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|
| |

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:  _____          _____
                                                                    *Executing officer's signature*

                                                              _____
                                                                      *Printed name and title*